**BILLS v. THAYER et al.    (No. 6820.)**

(Court of Civil Appeals of Texas. Austin. Nov. 26, 1924.)

1. **Evidence ⬅461(5)—Parol evidence admissible to explain what parties to deed understood by excepting mortgage of $6,500 from covenant against incumbrance.**

Where deed warranted title "except as to a mortgage of $6,500 now owing on said land," and actual incumbrance was represented by two instruments given on same day between same parties, and together represented debt of $6,500 at 6 per cent. and $1,300, representing 2 per cent. interest, for the term of the mortgage, evidence of understanding *held* admissible under parol evidence rule upon ground of mutual mistake.

2. **Evidence ⬅461(5)—Parol evidence admissible to explain exception to covenant against incumbrance.**

Where deed warranted land free of all incumbrances, "except said mortgage of $6,500," evidence was competent to show that grantee agreed to assume incumbrance so described with knowledge that the incumbrance was represented by two instruments made on same day between same parties, one covering principal and 6 per cent. interest thereon and other covering 2 per cent. interest thereon; the loan being $6,500 at 8 per cent. for 10 years.

3. **Covenants ⬅39—Evidence of understanding as to amount of incumbrance on land held to sustain directed verdict for defendants.**

In an action for breach of covenant against incumbrances, "except a mortgage of $6,500," evidence that parties understood that the incumbrance was represented by two mortgages, one for $6,500 at 6 per cent. interest and another for $1,300 representing 2 per cent. interest for the term of the loan, *held* to sustain directed verdict for defendants.

Appeal from District Court, Cooke County; C. R. Pearman, Judge.

Action by L. F. Bills against C. B. Thayer and others for breach of covenant of warranty against incumbrances. Judgment for defendants, and plaintiff appeals. Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Culp, Culp, & Culp, of Gainesville, and R. A. Keller, of Oklahoma City, Okl., for appellant.

Garnett & Garnett, of Gainesville, for appellees.

McCLENDON, C. J. This was an action by L. F. Bills against C. B. Thayer and others for breach of a covenant of warranty against incumbrances. The petition alleged, in substance, that appellees conveyed appellant a tract of land in Oklahoma containing 130 acres for a consideration of $12,800, of which $6,300 was in cash, and the balance was represented by the assumption of a $6,500 mortgage; that the conveyance expressly warranted the title to the land as free of all other incumbrances; that there was in fact an additional mortgage on the land of $1,300, which plaintiff was compelled to pay in order to clear his title, and for this sum he sued.

The defendants specially pleaded that the $1,300 mortgage was in fact a part of the $6,500 mortgage, in that the two mortgages were executed at the same time to the same party for a $6,500 loan for 10 years at 8 per cent., the larger mortgage providing for only 6 per cent., and the $1,300 mortgage representing the remaining 2 per cent. for the 10-year period; that these facts were known to plaintiff and explained to his attorney, and plaintiff agreed to assume the $6,500 loan and the 8 per cent. interest represented by the two mortgage instruments; and that, if in fact the terms of the conveyance did not embrace such assumption, it was the result of a mutual mistake.

The case was tried to a jury and judgment rendered for defendants upon a directed verdict. From this judgment plaintiff has appealed. The only question in the case is whether the trial court committed error in directing a verdict for defendants.

The controlling facts in the case which, except where noted, were uncontroverted, may be summarized as follows:

The land in question was subject to two mortgages executed on the same day by the same parties; one to secure a note for $6,500 for 10 years at 6 per cent., and the other to secure notes aggregating $1,300, which latter mortgage by its terms was made secondary to the former. The instruments themselves did not show that the notes secured by the second mortgage represented interest on the loan secured by the first. It was shown without dispute, however, that the two mortgages were given to secure a loan of $6,500 for 10 years at 8 per cent., and the smaller mortgage covered 2 per cent. of the loan for the 10-year period. The deed from defendants to plaintiff recited a cash consideration of $6,300, and warranted the title generally "except as to a mortgage of $6,500 now owing on said land"; the habendum clause reciting that the conveyance was to plaintiff, his heirs, etc., "free, clear, and discharged of and from all former grants, charges, taxes, judgments, mortgages, and other liens and incumbrances of whatsoever nature; except said mortgage of $6,500."

The grantors in this deed were defendant Dr. C. B. Thayer and Dr. C. F. Rice, joined by their wives. Dr. Rice died before the case was tried, and his administrator was made party defendant. J. J. Pace, who acted as agent for Thayer and Rice, testified, in substance, that he showed the land to plaintiff and brought him back to Gainesville, Tex., where the trade was made. He priced the land at $100 an acre, informing plaintiff that it was incumbered with a $6,500 mortgage that bore 8 per cent. and ran for 10 years. He said plaintiff was anxious to pay off the mortgage as soon as possible. The trade was agreed to upon their return to Gainesville, the price to be $12,800. Plaintiff then gave his check for $1,000, and the balance of cash, $5,300, was to be paid by draft on him with deed attached when his attorney, W. E. Murphy, should approve the title.

Dr. Thayer testified to the same effect as Mr. Pace regarding the terms of the trade, and that he advised plaintiff that the mortgage he was to assume was a $6,500 loan for 10 years at 8 per cent. He further testified that Mr. Murphy called to see him while examining the title and asked for an explanation of the $1,300 mortgage, and was told that it covered 2 per cent. interest on the $6,500 mortgage note.

Mr. Murphy testified that while examining the abstract of title he discovered the two mortgages, and surmised that the smaller was to cover 2 per cent. interest for 10 years on the $6,500 note; that he called the matter to plaintiff's attention and told him he would inquire of Dr. Thayer about the matter; that he did make his inquiry, and was informed that his surmise was correct; that after draft for the final payment was collected he calculated the accrued interest on the $6,500 note from date of last interest payment to date of final draft at 8 per cent., which amounted to $73.36. The testimony was undisputed that this sum, less $25 paid direct to Mr. Murphy, was deposited to the account of plaintiff, and that plaintiff was so informed. The $25 covered attorney's fees and exchange on the draft which were due by plaintiff.

While plaintiff denied that he was ever told that the interest on the $6,500 was 8 per cent., and that he knew the $1,300 mortgage covered 2 per cent. interest on that note, until after the conveyance was made, the effect of his testimony, from which we quote, was a substantial admission that he in fact had full information regarding the two mortgages

before the title was ever approved and deed executed.

"The $12,800 was not to be paid in cash. I was to assume a $6,500 loan. I was to pay the remainder in cash. There wasn't nothing said about how to pay it. I was to assume and pay $6,500, but there wasn't anything said about it; told me there was a $6,500 loan on it; just figured out what the difference would be, $6,300. I just now stated that I was to assume the mortgage. That is correct. They told me how long that mortgage ran. I think Mr. Thayer told me a 10-year loan, or running 10 years, but could be paid off at any time. I inquired about paying the loan off. I did not inquire anything about the interest, not a word. I had plenty of money them days; didn't care what the interest was. I had not struck an oil well, but some of my friends had. I said a while ago I didn't care what the interest was. I had plenty of money. That's what I said. I didn't mean for that to go into evidence. Mr. Murphy was my attorney in the examination of the title and passing on the abstract. He wrote that—the memoranda of the title—O. K. He was not representing me in the transaction; in passing on my abstract.

"I came to Gainesville after the deed was executed and delivered to me; came here before, too. I went to see Mr. Murphy in his office. He explained something to the effect that the $6,500 and 6 per cent. of the 8 per cent. interest was secured by the $6,500 mortgage, and the $1,300 mortgage was for 2 per cent. of that 8 per cent. but the abstract wasn't ready, and his opinion wasn't ready, and really I didn't pay much attention. It went in one ear and out the other. I waited for his final opinion."

With reference to his conversation with Mr. Murphy while the latter was examining the title, he testified:

"All Murphy said to me, really, I didn't grasp the idea of what he was putting to me—this law talk and a well digger, I couldn't conceive —I really absolutely didn't know that there was a second mortgage on the place until 3 or 4 months after the deal was made. Murphy was explaining something about the title, and he couldn't explain it because the abstract wasn't ready. He says, 'I think that will figure this way.' I guess he had went far enough into it to know there was nothing seriously wrong with the title. I don't know what means he did have to go into it. I don't know whether he had the abstract from the loan company. I don't know whether that is it or not—whether he did have the abstract. I think he was making an abstract from this copy. This week I was there in the office. I guess he did have the abstract."

Regarding the repayment to him of the accrued interest he testified:

"There was some accumulated interest paid to my credit in the Lindsay National Bank that I had overpaid. I don't know what rate— just so many dollars and cents to my credit there, and Judge Murphy had taken his pay for his opinion on this abstract out of this balance of mine there.

"I don't know whether it is a fact that Dr. Thayer put in the Lindsay National Bank to my credit $48.36, which was the interest on this loan from October 1, 1919, up to the date the deed was executed to me. It was put to my credit in the bank. I didn't draw it out; not all of it. I got part of it and Judge Murphy got part of it, but I don't know who put it there. I was told by Judge Murphy that it was money I had overpaid; that I had paid too much money. It was accumulated interest that should come back to me. Murphy figured that to me. There was nothing said about Thayer and Rice paying the interest on this $6,500 mortgage up to the time the trade was closed by executing the deed.

"Mr. Murphy explained to me what this money was put there for. He says 'Mr. Bills, I have found you a few dollars in this interest.' He said, 'This interest has accumulated up to a certain date. Mr. Thayer should have paid that,' he says. 'So much coming back to you, and' he said, 'I have arranged that and got you credit for it over at the bank,' and,' he says, 'I have taken my fee of $20, for my fee'; left me a balance of forty some dollars.

"I couldn't say that Dr. Thayer put in the bank to my credit, and that the bank book shows $48.46, which was interest from October 1st up to the time they executed me the deed, and that I then paid Mr. Murphy a fee of $20, and then $5, exchange, making a total of $48.36 which they put there to my credit in the bank. I don't know who put it there. I figured it was my own money. Thayer paid it back to me. After Thayer paid it to me, I never paid it back at any time. I guess Thayer paid that back to me. I drew part of it out of the bank. Murphy drew out part of it. Judge and I got the money together."

Appellees contend that the case of Johnson v. Elmen, 94 Tex. 168, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845, controls a proper disposition of this case. With this contention we cannot concur. In that case it was held that where, as a part of the consideration for a conveyance, the vendee agreed to pay off an incumbrance, equity would consider that as done which, under the agreement, ought to have been done, and parol evidence was admissible to show such agreement, although the deed made no mention of the incumbrance and contained a covenant of general warranty, which, under our decisions, embraces a covenant against incumbrances. There was no agreement here by the vendee to pay off or discharge a particular incumbrance, but an agreement to assume an incumbrance mentioned in the deed; there being an express covenant against any other incumbrance. The rule in Johnson v. Elmen is expressly limited to those cases in which the agreement is to pay off or discharge an incumbrance as distinguished from an agreement to assume or except from the operation of the covenant a particular incumbrance. The gist of the opinion is contained in the following quotation:

"In many cases it has been sought to show that one or more incumbrances were known to the covenantee and to exclude such from the operation of the covenant. But it is held, certainly by the great weight of authority, that

this cannot be done. A sufficient reason for the rule is that the covenantee in many instances may insist upon the covenant for the very purpose of guarding against incumbrances which he knew to exist. In other cases, it has been held that parol evidence cannot be admitted to show merely that the parties orally agreed that a certain incumbrance should be excepted from the operation of the covenant. To admit such evidence is to violate the familiar rule that parol evidence is not admissible to vary the terms of a written contract. So far, the courts are in practical accord. But whether .or not, notwithstanding a covenant against incumbrances in a deed, it may be shown by parol evidence that it was agreed between the parties at the time of the conveyance and as a part of the contract that the covenantee should himself discharge an incumbrance is a question of more difficulty, and one upon which there is a conflict of authority. We think, however, the rule that in such cases parol evidence is admissible is supported by the better reason and the weight of authority."

The effect of the holding in Johnson v. Elmen is very ably presented in Morriss v. Hesse (Tex. Civ. App.) 210 S. W. 710, the opinion in which in this regard was approved by the Commission of Appeals. 231 S. W. 318. See, also, Kleck v. Kleck (Tex. Civ. App.) 246 S. W. 720, and Whitehead v. Weldon (Tex. Civ. App.) 264 S. W. 958.

[1] If, therefore, the language of the deed as applied to the subject-matter dealt with is unambiguous, and excludes, as a matter of law, the $1,300 mortgage, parol evidence would not be admissible to show a contrary agreement of the parties. This is aside from the issue of mutual mistake. But the evidence was admissible, in our judgment, both upon the issue of a proper interpretation of the language employed in the deed and upon that of mutual mistake, and if not upon the former then clearly upon the latter.

It is a cardinal principle in construing written instruments that effect should be given to the intention of the parties, and where, as applied to the subject-matter of the contract, the language employed is not free from doubt, resort may be had to parol evidence to show what the parties intended. The following from Lockwood v. Railway, 103 F. 243, 43 C. C. A. 202, quoted with approval in Stevens v. Railway (Tex. Com. App.) 212 S. W. 639, is a very clear statement of this rule, and the reasons upon which it is based:

"The first rule of exposition, which governs every other, is that contracts should be so interpreted as to give effect to the intention of the parties; and, while the words selected by the parties themselves as a symbol to denote their purpose are usually the primary source from which intention is drawn, and the best and surest guide to its discovery, yet being employed sometimes by designing persons to disguise rather than to express the true thought, and being liable to careless misuse or ignorant misapplication, it is always the duty of the court, in all cases where they are susceptible of different constructions, to take into consideration the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted, for the purpose of ascertaining the true intent; for the intention of the parties is manifestly paramount to the manner chosen to effect it. The courts, therefore, may avail themselves of the same light which the parties enjoyed when the contract was executed, and may place themselves in the same situation as the parties who made it, in order that they may view the circumstances as those parties viewed them, and so judge the meaning of the words and the correct application of the language and the things described; and, if any of the terms used seem to contradict the manifest intention, as clearly indicated by the agreement as a whole, the intention must govern."

[2] The language employed in the deed was that the title was warranted, "except as to a mortgage of $6,500 now owing on said land," and the land was conveyed free of all incumbrances whatsoever, "except said mortgage of $6,500." Does this language, as applied to the subject-matter dealt with, necessarily exclude the $1,300 mortgage? We think not. The language employed was but descriptive of that which was excluded from the covenant; namely, "a $6,500 mortgage now owing on said land." The evidence shows, without contradiction, that the $6,500 loan was embraced in two instruments executed on the same day between the same parties, the one covering the principal note and 6 per cent. interest thereon, and the other covering 2 per cent. interest thereon, and that the whole transaction represented by the two instruments was a $6,500 loan at 8 per cent. for 10 years. Under these facts it was competent to show that the agreement of the parties was that the grantee was to assume the incumbrance represented by these instruments, and that they constituted what was described in the deed as "a $6,500 mortgage now owing on said land."

[3] That the evidence was sufficient to support a finding that this was the agreement of the parties is not open to question. To support a directed verdict for defendants it must admit of no other reasonable interpretation. The evidence is clear that the agreement was that plaintiff was to assume a 6,500 mortgage; that his attorney in the matter called his attention to the $1,300 mortgage, stating that he surmised it covered interest on the $6,500 note, and that he would ascertain the facts from Dr. Thayer; that Dr. Thayer confirmed this surmise; that after the deed was delivered and purchase-money draft paid, plaintiff's attorney called upon Dr. Thayer for an adjustment of accrued interest upon the basis of the assumption of a $6,500 loan bearing 8 per cent. interest; that Dr. Thayer settled with plaintiff's attorney upon this basis, depositing the balance

due thereunder to plaintiff's credit; and that plaintiff ratified this adjustment when it was made known to him. Whether in his negotiations with defendants and their agent plaintiff was told the rate of interest the $6,500 loan bore is not material. He does not intimate that he was deceived or misled in the matter. According to his testimony he never inquired the rate of interest, and did not care what the rate was; he was only interested in whether he could pay off the loan. The statement to him of his attorney that the second mortgage was probably 2 per cent. interest on the $6,500 note, brought to him actual knowledge of the second mortgage and its probable connection with the first, and this was followed up by his attorney, acting in his behalf, and with the knowledge on plaintiff's part that he was doing so. That he paid little attention to what his attorney told him, and that it "went in one ear and came out the other," does not detract from the actual knowledge he thus acquired. The subsequent adjustment upon the basis of his assumption of $6,500 at 8 per cent. relieves the matter of any possible doubt. We conclude that the minds of the parties met upon a trade whereby plaintiff acquired the land for $12,800, represented by $6,300 cash and the assumption of a mortgage debt of $6,500 bearing 8 per cent. interest from date of consummation of the sale, such debt being represented by the two mortgage instruments.

Under this interpretation of the evidence defendants established a complete defense to plaintiff's suit; whether upon the theory that the deed was susceptible of explanation by parol evidence or upon the theory that as the result of a mutual mistake it did not fully express the agreement which the parties in fact made is unimportant.

The trial court's judgment is affirmed. Affirmed.